John H. McCLANAHAN, Appellant
(Plaintiff Below),

v.

REMINGTON FREIGHT LINES, INC.,
and Richard Barbour, Individually and
as Agent for Remington Freight Lines,
Inc., Appellees (Defendant Below).

No. 79S02–8801–CV–12.

Supreme Court of Indiana.

Jan. 6, 1988.

Margaret Ann Nolan, Lafayette, Phillip Burchett, Blanchester, for appellant.

Joseph T. Bumbleburg, Jeffrey J. Newell, Ball, Eggleston, Bumbleburg & McBride, Lafayette, for appellees.

SHEPARD, Chief Justice.

■ Today we revisit the question of the continued vitality of the employment at will doctrine. The issue turns on whether an employee fired for refusing to commit an illegal act for which he would be personally liable has a cause of action against his employer. We believe such an exception to the employment at will doctrine is appropriate under these facts.

Appellant John H. McClanahan started work in November 1981 for an indefinite term as an interstate truck driver for appellee Remington Freight Lines, Inc. Remington Freight is an Indiana business with headquarters in Remington. McClanahan and Remington Freight had no written employment agreement, and McClanahan does not contest his status as an employee at will.

In March 1982, Remington's safety director, Richard Barbour, told McClanahan

to travel to New York to pick up a load of freight bound for Minnesota. McClanahan complied and, after loading, discovered that his load weighed approximately 78,000. Barbour had designated a route for McClanahan which required him to travel through Illinois to Minnesota. While the federal weight limit was 80,000 pounds, Illinois at the time allowed a maximum load of 75,000 pounds.

At some point after loading the truck but before arriving in Illinois, McClanahan called Barbour and informed him that his truck was too heavy to travel on Illinois roads. Barbour responded that the overload made no difference because Remington would pay any fine incurred by McClanahan. Barbour also told McClanahan that it was unlikely that he would be caught because of the absence of permanent scales along the Illinois route which Barbour had specified. McClanahan refused to drive the overweight load through Illinois, and he was ordered to return his truck to Remington's headquarters. Upon arrival, Barbour told McClanahan that he was no longer employed by Remington. According to the employee manual given to McClanahan when he was hired, refusal to carry a load constituted a "voluntary quit."

McClanahan's application for unemployment insurance benefits was denied. He appealed the decision. A hearing officer from the Indiana Employment Security Division Appellate Section conducted an administrative hearing in which McClanahan represented himself and Barbour appeared for Remington. The hearing officer questioned both McClanahan and Barbour under oath, and Barbour conducted an informal cross-examination of McClanahan. Based on this evidence, the Appeals Referee reversed the initial denial of unemployment benefits to McClanahan, ruling:

> The claimant was discharged because he refused to perform an illegal act. The employer rule, under the circumstances, is not reasonable since it would require employees to violate the law.

Remington did not appeal the decision. McClanahan subsequently initiated the present lawsuit for wrongful discharge.

All parties sought summary judgment. McClanahan's motion claimed that the doctrine of collateral estoppel prevented the defendants from relitigating, in the wrongful discharge case, the administrative determination that McClanahan had been discharged for refusing to commit an illegal act. Remington and Barbour sought summary judgment based on their claim that McClanahan was an employee at will and could be fired for any reason, including his refusal to drive through Illinois in an overweight truck. The trial court denied McClanahan's motion and granted the defendants' motions. McClanahan appealed.

In an eloquent opinion by Judge Sullivan, the Court of Appeals held that Remington and Barbour were not entitled to judgment as a matter of law because McClanahan had provided a sufficient factual basis for a wrongful discharge action. *McClanahan v. Remington Freight Lines, Inc.* (1986), Ind.App., 498 N.E.2d 1336. The Court of Appeals further ruled that the trial court correctly denied summary judgment to McClanahan because he failed to provide sufficient admissible evidence to support his claim that collateral estoppel barred relitigation of the reason for McClanahan's discharge. In doing so, the Court of Appeals stated broadly that the decisions of administrative agencies "are to be accorded collateral estoppel effect (in subsequent civil proceedings) if the proceedings are judicial in nature and no convincing reasons are advanced as to why the proceedings should not be final." *Id.* at 1343.

Remington and Barbour petitioned for transfer, alleging the Court of Appeals' ruling is contrary to established Indiana law. Although the parties raise numerous issues for review, we will only address two. First, we consider the right of an employee at will to bring an action for wrongful discharge when he is fired for refusing to commit an illegal act. Second, we judge the collateral estoppel effect of an administrative determination in subsequent civil actions.

Inasmuch as this appeal arises from the granting of a motion for summary judgment, our task is to determine whether

there is a genuine issue of material fact and whether the law was correctly applied. *Hamblen v. Danners, Inc.* (1985), Ind.App., 478 N.E.2d 926. We must accept as true the facts alleged by the non-moving party, but we normally consider only that evidence which was before the trial court at the time it ruled on the motion for summary judgment. *Romack v. Public Service Company of Indiana* (1986), Ind.App., 499 N.E.2d 768, *transfer granted, vacated in part,* (1987), Ind., 511 N.E.2d 1024.

## I. Wrongful Discharge

Prior to the mid-nineteenth century, an employer was responsible for his servant's health, welfare and security. Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith,* 93 Harv.L.Rev. 1816, 1824 (1980). The "English rule" stated that hiring for an unspecified term was presumed to be for at least a year and the employer was required to give a "quarter's warning" before discharging an employee who sought continued employment. By the mid-nineteenth century, however, "[e]merging notions of the freedom of contract and of the value of economic growth contributed to the evolution of the at-will doctrine...." *Parnar v. Americana Hotels,* 65 Hawaii 370, 652 P.2d 625, 628 (1982) (citing *1 W. Blackstone, *Commentaries* 426). The "American rule" rejected the presumption of a yearly hiring and required the employee to bear the burden of proving that employment was for other than an indefinite term. *Id.* 652 P.2d at 628.

The American employment-at-will doctrine gained strength and reached its peak by the beginning of the twentieth century. At that time, the employer's right to discharge at his whim was virtually absolute. With the advent of federal and state legislation, collective bargaining, and employment contracts, the vitality of that rule has dwindled. The essence of the modern rule is that an employment contract of indefinite duration is presumptively terminable at the will of either party. *Streckfus v. Gardenside Terrace Cooperative, Inc.* (1987), Ind., 504 N.E.2d 273.

In recent years the employment at will doctrine has come under particular attack in the courts, which have been asked to create modifications or exceptions to the doctrine to avoid potentially harsh results. A common plea by discharged plaintiffs is that an employer should be subjected to tort liability if his firing of the employee contravenes a well-defined public policy. The judicial response to pleas for a public policy exception to the employment at will doctrine has been mixed.

This Court has recognized such an exception to the employment at will doctrine when an employee was discharged for filing a workmen's compensation claim. *Frampton v. Central Indiana Gas Co.* (1973), 260 Ind. 249, 297 N.E.2d 425. We declared that "when an employee is discharged solely for exercising a statutorily conferred right[,] an exception to the general rule must be recognized." *Id.* at 253, 297 N.E.2d at 428. The Indiana appellate courts have not applied the *Frampton* exception in any subsequent case. As the Court of Appeals noted, the Indiana *courts* have not been confronted since Frampton with cases in which the employee provided requisite proof that he was fired for exercising a statutory right. *McClanahan,* 498 N.E.2d at 1340–41.

The Court of Appeals determined that the *Frampton* exception properly applied to McClanahan's claim. It conceded that McClanahan claimed he had been fired for fulfilling a statutory duty, rather than exercising a statutory right, but nonetheless reasoned:

> If, as *Frampton* clearly holds, an employee cannot be discharged solely for exercising a statutory right, logic and justice compel us to hold that an employee cannot be discharged solely for refusing to breach a statutorily imposed duty. To say that an employee discharged for doing what the law *permitted* is entitled to greater protection than an employee discharged for doing what the law *required* would defy common sense.

*McClanahan,* 498 N.E.2d at 1339 (emphasis in original).

We agree with the Court of Appeals that firing an employee for refusing to commit an illegal act for which he would be personally liable is as much a violation of public policy declared by the legislature as firing an employee for filing a workmen's compensation claim. A separate but tightly defined exception to the employment at will doctrine is appropriate under these facts.

In our most recent pronouncement in this area, we concluded that a driver who was terminated after he sued the trucking firm with which he was associated to resolve a compensation dispute could not maintain an action for retaliatory discharge. The driver operated pursuant to a series of employment contracts, however, and we noted that his pursuit of a contract claim remained viable. *Morgan Drive Away, Inc. v. Brant* (1986), Ind., 489 N.E.2d 933. We noted our reluctance to adopt a generalized public policy exception to the doctrine of employment of will. The Court of Appeals had already made similar observations. *Hamblin v. Danners, Inc.* (1985), Ind.App., 478 N.E.2d 926, 929 (Indiana appellate courts "have consistently refused to create a public policy exception to the employment at will doctrine in the absence of a statute defining the public policy.").

No Indiana statute explicitly states that public policy is violated by committing an illegal act or requiring an employee to do so at the risk of his job. Nonetheless, the idea that individuals contravene public policy when they violate the law is so basic to our social and political order that a legislative pronouncement of that concept is hardly necessary. Some states interpret the penal code as a statement of public policy; when the law is violated, so is the public policy. *See Petermann v. International Brotherhood of Teamsters Local 396,* 174 Cal.App.2d 184, 188, 344 P.2d 25, 27 (1959).[1]

If McClanahan had chosen to drive his overweight truck through Illinois, he would have been personally liable for violation of Illinois law and subject to a fine. Ill.Ann.Stat. Ch. 95½, § 15–101 (Smith–Hurd 1971). Furthermore, he would have been jointly and severally liable for the cost of repairing any damage to the highway or highway structures caused by his overweight vehicle. Ill.Ann.Stat. Ch. 95½, § 15–318 (Smith–Hurd Supp.1986).

Depriving McClanahan of any legal recourse under these circumstances would encourage criminal conduct by both the employee and the employer. Employees faced with the choice of losing their jobs or committing an illegal act for which they might not be caught would feel pressure to break the law simply out of financial necessity. Employers, knowing the employees' susceptibility to such threats and the absence of civil retribution, would be prompted to present such an ultimatum.

The law will not countenance such a situation. Other states have acknowledged a public policy exception to the employment at will doctrine when an employee is discharged for refusing to commit an illegal act. *See, e.g., Petermann,* 174 Cal.App.2d 184, 344 P.2d 25 (refusal to commit perjury); *Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 610 P.2d 1330, 164 Cal.Rptr. 839 (1980) (refusal to engage in price-fixing); *Harless v. First National Bank,* 162 W.Va. 116, 246 S.E.2d 270 (1978) (refusal to violate a consumer credit code); *O'Sullivan v. Mallon,* 160 N.J.Super. 416, 390 A.2d 149 (1978) (refusal to practice medicine without a license); *Trombetta v. Detroit, Toledo & Ironton Railroad Co.,* 81 Mich.App. 489, 265 N.W.2d 385 (1978) (refusal to alter pollution control reports).

McClanahan stated a cause of action when he alleged he was wrongfully discharged for refusing to commit an illegal act for which he would have been personally liable. Accepting as true the facts alleged by McClanahan, we conclude that McClanahan clearly has presented suffi-

---

1. It is on this basis that the so-called "whistleblower" cases may be distinguished. *See, e.g., Martin v. Platt* (1979), 179 Ind.App. 688, 386 N.E.2d 1026; *Campbell v. Eli Lilly & Co.* (1980), Ind.App., 413 N.E.2d 1054. In such cases, the employees' reports of their employers' illegal activities, while certainly advantageous if substantiated, were not mandatory under the law, unlike compliance with a state's penal code.

cient evidence to overcome the defendants' motion for summary judgment.

## II. Collateral Estoppel

Like the Court of Appeals, we are persuaded to address the question of the applicability of collateral estoppel to the Board's ruling because the issue may arise at trial. The Court of Appeals correctly noted that collateral estoppel applies where a particular issue is adjudicated and then put in issue in a subsequent suit on a different cause of action between the same parties or their privies. *McClanahan*, 498 N.E.2d at 1342. Collateral estoppel is a derivative of *res judicata*.

McClanahan argued that this issue was adjudicated in the administrative hearing of the Employment Security Division. He asserted that Remington and Barbour are estopped from challenging the board's ruling that McClanahan was fired for refusing to commit an illegal act, citing *South Bend Federation of Teachers v. National Education Association* (1979), 180 Ind.App. 299, 389 N.E.2d 23 The Court of Appeals agreed that administrative agency decisions may be given collateral estoppel effect in subsequent civil proceeding, although it ultimately held that McClanahan had not provided sufficient admissible evidence showing collateral estoppel applied in this case. *McClanahan*, 498 N.E.2d at 1343. Remington and Barbour contend that the Court of Appeals incorrectly interpreted *South Bend Federation of Teachers* and thereby contravened the decision in *Cox v. Indiana Subcontractors Association, Inc.* (1982), Ind.App., 441 N.E.2d 222.

We are not prepared to go so far in reliance on *South Bend Federation of Teachers*. That case involved the application of collateral estoppel to two rulings by the same administrative board on the same subject. That is decidedly different from the application of collateral estoppel to an administrative determination in a subsequent civil proceeding.

*Cox* is much closer to the facts at hand. After his firing by the defendant, Cox was denied unemployment compensation by the Indiana Employment Security Division.

Cox appealed to the Review Board, which affirmed the ruling that Cox was terminated for just cause. Cox subsequently filed suit against his former employer, alleging among other things breach of contract. The employer moved for summary judgment on the contract claim, asserting that the administrative ruling collaterally estopped Cox from disputing that he was terminated for just cause. The Court of Appeals refused to give collateral estoppel effect to the decision of the Indiana Employment Security Division after ruling that the Division did not have the authority to determine complex contract issues. In this case, we have already determined that McClanahan may recover if he successfully proves he was discharged for refusing to commit an illegal act. Thus, the administrative ruling in this case would determine the very issue central to success or failure in this civil case.

The Court of Appeals in *Cox* relied on criteria from *Gear v. City of Des Moines*, 514 F.Supp. 1218 (S.D.Iowa 1981), to determine whether an administrative determination should estop subsequent litigation:

1) whether the issues sought to be estopped were within the statutory jurisdiction of the agency;

2) whether the agency was acting in a judicial capacity;

3) whether both parties had a fair opportunity to litigate the issues;

4) whether the decision of the administrative tribunal could be appealed to a judicial tribunal.

This test for the use of collateral estoppel seems appropriate.

Because of the unusual circumstances in this case, neither Remington nor Barbour had a full and fair opportunity to litigate the issue of whether McClanahan was discharged for refusing to commit an illegal act. Thus, even though some administrative proceedings may estop relitigation in subsequent civil proceedings, the doctrine would not apply in this case.

First, the nature of the administrative hearing itself differed substantially from a

traditional courtroom proceeding. The referee acted as the primary questioner, and neither party was represented by counsel. Cross-examination was minimal and ineffective. Inasmuch as the rules of evidence do not strictly apply to administrative proceedings, a substantial amount of hearsay potentially inadmissible at trial was introduced without objection.

Moreover, Barbour represented Remington at the administrative proceeding, although they now are co-defendants with potentially conflicting interests. Barbour was not individually a party to the administrative proceeding; therefore, the mutuality requirement of collateral estoppel is not satisfied, at least with regard to Barbour. In addition, Remington and Barbour at the time were presumably concerned only with establishing that McClanahan was not entitled to unemployment benefits. Remington decided against appealing the board's ruling before McClanahan filed the present action. It is altogether likely that Remington would have pursued the appeal had it known McClanahan's intent to file a civil action for substantial damages.

In light of all these circumstances, fairness requires that we not apply collateral estoppel. The relative informality of the particular administrative procedure at issue here does not meet the test used in *Cox*. It is a procedure designed for quick and inexpensive determinations of unemployment benefits. Recognizing it as a basis for collateral estoppel might well force the parties to convert such proceedings into longer and more expensive ones. Whether other administrative proceedings might qualify under *Cox* is a matter for another day.

The trial court's denial of summary judgment to McClanahan is affirmed. Its entry of summary judgment for Remington and Barbour is reversed and the cause remanded for further proceedings consistent with this opinion.

DeBRULER, GIVAN and PIVARNIK, JJ., concur.

DICKSON, J., not participating.