ATTORNEYS FOR APPELLANTS

Andrew W. Hull
Daniel K. Burke
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Mark J. R. Merkle
Anthony W. Mommer
Indianapolis, Indiana



FILED

Dec 01 2009, 2:09 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

_____

No. 29S02-0902-CV-00065

BRENNEN BAKER,

*Appellant (Plaintiff/Counterclaim Defendant below),*

and

MOISTURE MANAGEMENT,

*Appellant (Third-Party Defendant below),*

v.

TREMCO INCORPORATED,

*Appellee (Defendant/Counterclaim Plaintiff / Third-Party Plaintiff Below),*

and

RICK GIBSON,

*Appellee (Defendant/Counterclaim Plaintiff / Third-Party Plaintiff Below).*

_____

Appeal from the Hamilton Circuit Court, No. 29C01-0411-CT-1547
The Honorable Judith S. Proffitt, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 29A02-0711-CV-1001

_____

**December 1, 2009**

**Shepard, Chief Justice.**

Appellant Brennan Baker contends that constructive discharge falls within the public policy exception to Indiana's doctrine of employment at will. We conclude that a claim may rest on involuntary resignation, but only where the cause fits within the grounds recognized by our decisions on retaliatory discharge. Baker's claim does not.

**Facts and Procedural History**

Tremco, Inc. manufactures and sells various products for construction and maintenance of roofing systems. On July 19, 1991, Brennan Baker and Tremco entered into an agreement in which Tremco employed Baker to sell and promote the sale of Tremco's products in such areas or to such accounts as Tremco might assign him. The agreement included provisions under which Baker agreed not to compete with Tremco or solicit any of Tremco's customers while Baker was employed by Tremco and for a period of eighteen months following termination.

During the course of Baker's employment, Tremco trained him in the promotion of goods and services through the Association of Educational Purchasing Agencies (an association of school systems that combine their purchasing power to buy goods), in roof asset management programs, and in thermal imaging that would reveal problems in roofing systems. Baker also sold field inspection services, roof asset management services, and patch and repair services as well as roofing supplies and products. Baker received commissions on the sales of Tremco's products and services provided by Waterproofing Technologies, Inc., Tremco's subsidiary.

Baker resigned from his employment on January 5, 2004, after a dispute arose between Baker and Tremco regarding Tremco's sales and bidding practices. Baker alleges that he concluded that the AEPA schools were being overcharged for products and services, and after informing his immediate supervisor Rick Gibson, he refused to continue using WTI policies and the AEPA contract as a means of selling Tremco's products.

Baker subsequently formed and operated Moisture Management, a company that provides its clients with consultation and troubleshooting services relating to roofing and waterproofing as well as mold consultation.

Baker filed a complaint for damages against Tremco, seeking a declaration that the covenant not to compete is unenforceable and asserting claims for wrongful termination, defamation, and violation of Indiana's blacklisting statute. Tremco filed a counterclaim, seeking an injunction to enforce the covenant not to compete and asserting claims against Baker for breach of contract and against Moisture Management for tortious interference. The parties filed competing summary judgment motions with respect to the non-compete claim. Tremco also argued that no genuine issue of material fact exists with respect to Baker's remaining claims. The trial court granted summary judgment in favor of Tremco and Gibson with respect to all claims and issued an injunctive relief against Baker and Moisture Management.

Baker appealed, and the Court of Appeals affirmed in part, reversed in part, and remanded. Baker v. Tremco Inc., 890 N.E.2d 73 (Ind. Ct. App. 2008). We granted transfer. 915 N.E.2d 981 (Ind. 2009) (table).

Although the parties raise numerous issues for review, we will only address three.[1] First, we consider whether a claim for constructive retaliatory discharge falls within Indiana's public policy exception to the employment at will doctrine. Second, we consider whether the non competition agreement is unenforceable because Baker is actually competing with a subsidiary of Tremco. Third, we judge whether a statement from the former supervisor was slanderous per se so as to create an actionable defamation claim.

---

[1] We summarily affirm the Court of Appeals disposition of the claims for slander about mental illness as slander per quod, blacklisting statute, and tortious interference with contract. Ind. App. Rule 58(A).

# I.    Retaliatory Discharge

Baker contends that he is entitled to judgment with respect to his breach of contract/wrongful termination claim against Tremco. (Appellants' Br. at 26.) He argues that he was wrongfully discharged for refusing to participate in illegal activity--refusing to participate in Tremco's scheme to sell its roofing products and WTI's services by violating public bidding laws and defrauding Indiana public schools. Tremco argues that Baker's employment was not involuntarily terminated, noting that Baker tendered his own resignation. (Appellees' Br. at 20.)

"Indiana follows the doctrine of employment at will, under which employment may be terminated by either party at will, with or without reason." Wior v. Anchor Indus., Inc., 669 N.E.2d 172, 175 (Ind. 1996). The presumption of at-will employment is strong, and we are disinclined to adopt broad and ill-defined exceptions to the employment at will doctrine. Orr. v. Westminster Village N., Inc., 689 N.E.2d 712, 717 (Ind. 1997).

This Court has recognized only three exceptions to the doctrine. First, if an employee establishes that "adequate independent consideration" supports the employment contract, the Court generally will conclude that the parties intended to establish a relationship in which the employer may terminate the employee only for good cause. Id. at 718. Adequate independent consideration is provided when the employer is aware that the employee had a position with assured permanency and the employee accepted the new position only after receiving assurances guaranteeing similar permanency, or when the employee entered into a settlement agreement releasing the employer from liability on an employment related claim against the employer. Id.

Second, we have recognized a public policy exception to the doctrine if a clear statutory expression of a right or a duty is contravened. Wior, 669 N.E.2d at 177, n.5.

Third, this Court has recognized that an employee may invoke the doctrine of promissory estoppel by pleading the doctrine with particularity, demonstrating that the employer made a promise to the employee, that the employee relied on the promise to his detriment, and that the

4

promise otherwise fits within the Restatement test for promissory estoppel. Orr, 689 N.E.2d at 718.

In this case, Baker argues the second of these, saying that when he refused to participate in Tremco and WTI's unlawful activities in using the AEPA/Wilson line-item contract to violate public bidding laws and defraud public schools in Indiana, he was advised that he would be terminated. Baker cites McClanahan v. Remington Freight Lines, Inc., 517 N.E.2d 390, 392-93 (Ind. 1988) for support.

In McClanahan, we extended the public policy exception to include a "separate but tightly defined exception to the employment at will doctrine" when an employer discharges an employee for refusing to commit an illegal act for which the employee would be personally liable. 517 N.E.2d at 393. In that case, an at-will employee working as an interstate truck driver refused to drive his overweight truck through Illinois, fearing he would be personally liable for violating Illinois law and subjected to fines. Id. at 391. The employer ordered the employee to return to the company headquarters, and it terminated him when he arrived. According to the company's employee manual, the employee's actions constituted a "voluntary quit." Id. The employee filed a claim for wrongful discharge. Id.

The decision in McClanahan flowed from Frampton v. Cent. Ind. Gas Co., 260 Ind. 249, 297 N.E.2d 425 (1973), where this Court first recognized the public policy exception to the employment at will doctrine. Frampton had filed a claim under workers compensation, and Central Indiana Gas fired him for doing so. We declared that "when an employee is discharged solely for exercising a statutorily conferred right[,] an exception to the general rule must be recognized." Id. at 253, 297 N.E.2d at 428.

Despite the fact that the employee in McClanahan was fulfilling a statutory duty (declining to drive an overweight truck in abrogation of a statute) rather than exercising a statutorily conferred right, we held that "firing an employee for refusing to commit an illegal act for which he would be personally liable is as much a violation of public policy declared by the

5

legislature as firing an employee for filing a workmen's compensation claim." 517 N.E.2d at 392-93.

Tremco contends that <u>McClanahan</u> offers no support because our holding was carefully limited to an employee who was terminated, and Tremco further explains that Baker resigned and was not fired. (Appellees' Br. at 18.) Baker, by contrast, argues that Tremco fails to refute that Baker was constructively discharged from his employment for refusing to participate in illegal activity. (Appellants' Br. at 27.) He cites <u>Tony v. Elkhart County</u>, 851 N.E.2d 1032 (Ind. Ct. App. 2006) to suggest that the public policy exception includes situations where the employee was constructively discharged.

In <u>Tony</u>, an employee serving as a highway maintenance worker was involved in two work-related accidents in which he sustained injuries that required surgery, physical therapy, and placement on work restrictions by his physicians. <u>Id.</u> at 1034. The employee was subjected to a hostile working environment in which he was ridiculed by the employer's management for his injuries and compensation claims, and the management ignored the employee's restrictions and directed him to perform task that exceeded the employee's limitations and placed him in further risk of injury. <u>Id.</u> The employment relationship ended, and the employee subsequently filed a complaint against the employer for constructive discharge in retaliation for the employee's workers compensation claims. <u>Id.</u> The complaint was dismissed by the trial court.

On appeal, the employee argued that "the court should recognize the doctrine of constructive discharge as a claim under <u>Frampton</u> that an employee at will can raise in the context of a common law retaliatory discharge claim brought against his employer." <u>Id.</u> at 1037. The Court of Appeals held that "a constructive discharge in retaliation for filing a worker's compensation claim falls within the <u>Frampton</u> public policy exception and that a cause of action for constructive retaliation discharge exists for an employee that can show that he has been forced to resign as a result of exercising this statutorily conferred right." <u>Id.</u> at 1040. The court reasoned that an employer's acts of creating working conditions so intolerable as to force an employee to resign in response to exercise of the employee's statutory right to file a worker's compensation claim also "creates a deleterious effect on the exercise of this important statutory

6

right and would impede the employee's ability to exercise his right in an unfettered fashion without being subject to reprisal." Id.

We find this discussion convincing and conclude that a constructive retaliatory discharge falls within the ambit of the narrowly drawn public policy exception to the employment at will doctrine. Depending on the facts, it is merely retaliatory discharge in reverse. The constructive discharge doctrine acknowledges the fact that some employee resignations are involuntary and further prevents employers who wrongfully force an employee to resign to escape any sort of liability for their actions.

Still, the fulcrum of the discharge must fit within the exception as recognized by Frampton and McClanahan. This was certainly the case in Tony, where the employer ridiculed the employee for his workers compensation claim and the attendant work limitations.

Baker's claim is not within the ambit of the recognized exceptions to the general doctrine of at-will employment. His constructive discharge contentions rest on Tremco's participation in activities of one of the educational service centers the General Assembly has authorized pursuant to Ind. Code § 20-20-1-1 et seq. Each of these centers is "an extended agency of school corporations that operates under rules established by the state board of education." Ind. Code § 20-20-1-2(1) (2007). They constitute a mechanism through which schools may undertake collective programs and services, one of which is joint purchasing and financial management. Ind. Code § 20-20-1-2(b)(7) (2007). The purchasing activities of the multiple centers proceed collectively through the Association of Educational Purchasing Agencies. As Baker notes, this Association and one or more of the regional service centers have been cooperating in the purchase of roofing supplies and services for local school corporations since 2000. (Appellants' Br. at 4.) These efforts have proceeded under the framework enacted by the General Assembly, in accordance with the rules promulgated by the state board of education, and as audited by the state board of accounts.

At its heart, Baker's constructive discharge claim rest on his allegation that the roofing activities conducted under this statutory regime contravene other statutes about bidding public

projects. We can be agnostic on such a question of statutory construction and still conclude as a matter of common law that it is not on par with the rights and obligations recognized as a basis for discharge complaints in Frampton and McClanahan.

## II. Non-Compete Agreement and the Subsidiary

The agreement which Tremco and Baker executed in 1991 provided that in consideration of Baker's employment and of Tremco's investment in Baker's training, he would not compete with Tremco for a period of eighteen months after his departure from the company "in any aspect of any Applicable business in the areas in which the Applicable business is being conducted by you on the date of the termination of your employment or in which it has been conducted by you during the 24 month period which precedes such termination date." (Appellees' App. at 35.)

During his employment, Baker sold services and products in a territory Tremco designated as "M17," portions of southwest and southern Indiana. (Appellants' App. 46-51.) For a period of time after he left Tremco in January 2004, Baker did not solicit work in this area, understanding it to be covered by the 1991 agreement. Id. at 62. Beginning in late 2004, he started calling on the same customers inside "M17" whom he had solicited for Tremco. Id. at 63-72. Baker says that he and his new company Moisture Management, Inc., assist school personnel in preparing specifications, evaluating bids from contractors, and overseeing roofing projects "in much the same way" as Tremco's subsidiary WTI. (Appellants' Br. at 23.)

Baker asserts that while he may be competing with WTI, he is not competing with Tremco, with which he signed the employment agreement.

The parties' agreement provides that it "shall be governed by the internal laws of the State of Ohio." (Appellants' App. at 641.) In Ohio, as in Indiana, covenants not to compete are disfavored. They are enforced only to the extent that the restraints in question are reasonably necessary to protect the legitimate business interests of the employer, do not place an undue burden on the employee, and do not injure the public interest. Raimonde v. Van Vlerah, 325 N.E.2d 544 (Ohio 1975).

We address elsewhere some subsidiary claims Baker makes about the enforceability of the agreement, but a central one is that he now competes with WTI, the Tremco subsidiary, rather than with Tremco itself. Baker does not cite any Ohio caselaw on employment agreements as respects competing with parent companies and subsidiaries. He does cite one case in which an appellate court affirmed a trial court's decision not to enforce an agreement where there was but "tangential overlap" between the business activities of the former and the new employer. Facility Serv. & Sys., Inc. v. Vaiden, No. 86904, 2006 WL 1572236 at *1 (Ohio Ct. App. June 8, 2006).

In Vaiden, 99% of the new employer's services were different from the business line of the former employer, making it altogether plausible that the employee had not moved to a "business similar to the type of business in which the Company is engaged," the restraints imposed by the employment contract. Id.

Baker's deposition indicates that he received extensive training concerning Tremco's roofing products, about roofing management programs, and on the operation of the Association of Educational Purchasing Agencies. (Appellees' App. 105-07, 111, 114-19.) Baker received all his compensation from Tremco, whether it related to Tremco products he sold or to WTI services he sold. (Appellees' App. at 52-54.) We cannot conclude on this evidence that the trial court erred in finding that Baker was competing for business he had been conducting for Tremco.

### III.  Slander Per Se

Most defamation actions require proof of damage flowing from the slander. Baker's challenge to the trial court's grant of summary judgment on his slander claim is that the remarks he says were made about him were slander per se, for which no particular proof of injury is required.

Baker argues that "Gibson, a Tremco representative, made statements that are defamatory per se when he stated to David Tyndall that Baker . . . had engaged in inappropriate sales

9

practices." (Appellants' Br. at 28.) Tremco asserts that "the statement that Baker had engaged in 'inappropriate' sales practices is far too vague and broad to convey any defamatory meaning," and cites Levee v. Beeching, 729 N.E.2d 215 (Ind. Ct. App. 2000) for support.

A defamatory communication is one that tends to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person. Kelly v. Tanoos, 865 N.E.2d 593 (Ind. 2007) (declining to abolish the presumption of damages in action for defamation per se and instead resolving the issue under the qualified privilege doctrine). Whether a communication is defamatory is a question of law for the court, unless the communication is susceptible to either a defamatory or non-defamatory interpretation--in which case the matter may be submitted to the jury. Id.

A defamatory communication is said to either be "defamatory per se" or "defamatory per quod." Id. "A communication is defamatory per se if it imputes: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." Id. To maintain an action for defamation per se the plaintiff must demonstrate (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages. Schrader v. Eli Lilly and Co., 639 N.E.2d 258, 261 (Ind. 1994). "Actions for per se and per quod defamation are susceptible to different requirements with regard to the showing of damages." Kelly, 865 N.E.2d at 597. In an action for per se the plaintiff is "entitled to presumed damages 'as a natural and probable consequence' of the per se defamation." Id. (quoting Rambo v. Cohen, 587 N.E.2d 140, 145 (Ind. Ct. App. 1992). In an action for defamation per quod, the plaintiff must demonstrate special damages. Id.

In Levee, a school principal contended that a teacher union representative's remarks, calling her a "liar" and stating that she "favored some staff," were defamatory per se. 729 N.E.2d at 220. Our Court of Appeals held that these remarks were not actionable per se because these words were not "so obviously and naturally harmful that proof of their injurious character can be dispensed with." Id. (quoting Moore v. Univ. of Notre Dame, 968 F.Supp. 1330, 1334 (N.D. Ind. 1997)).

10

We find <u>Levee</u> instructive.  Baker deposed Tyndall, to whom the Tremco representative spoke.  Asked what else the Tremco representative said besides "inappropriate sales practices," Tyndall could not be more specific. (Appellants' App. at 76-80.)  Here, Gibson's statement that Baker had engaged in "inappropriate" sales practices is far too vague to conclude that they were "so obviously and naturally harmful that proof of their injurious character can be dispensed with." <u>Id.</u> at 220.  Indeed, it may be inferred from use of the word "inappropriate" that the sales practice did not amount to any misconduct.

We hold that this communication was not defamation <u>per</u> <u>se</u> and affirm the trial court's disposition on this issue.

## Conclusion

We affirm the judgment of the trial court.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.