



FILED
Mar 31 2020, 12:18 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 20S-CT-233

## Forrest Perkins
*Appellant (Plaintiff below)*

—v—

## Memorial Hospital of South Bend
*Appellee (Defendant below)*

Argued: October 10, 2019 | Decided: March 31, 2020

Appeal from the St. Joseph Superior Court
No. 71D05-1609-CT-404
The Honorable Jenny Pitts Manier, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 18A-CT-1340

**Opinion by Justice Massa**

Chief Justice Rush and Justices David and Goff concur.
Justice Slaughter dissents with separate opinion.

**Massa, Justice.**

Forrest Perkins, who had been an at-will employee working as a police officer, sued Memorial Hospital of South Bend for wrongful termination after it purportedly fired him for stealing food from the cafeteria. Perkins alleges that the true reason for his termination was the adverse testimony he gave at an unemployment compensation appeal hearing on behalf of a former coworker. The trial court, however, granted summary judgment for Memorial, asserting that because Perkins was never actually subpoenaed to testify, the public policy exception to the at-will employment doctrine—which would have barred his firing—did not apply.

Today, we reverse summary judgment and remand. While we hold that testimony compelled by a subpoena or other statutory duty is protected under the public policy exception to at-will employment, we again decline to carve out a new broad exception to the at-will employment doctrine. Perkins was obliged to cooperate with service of process and provide complete and honest testimony on the stand. Consequently, the only remaining question is whether Perkins was—without a paper subpoena— constructively compelled to testify once he was at the hearing. Because honest testimony by witnesses is important to the well-functioning of the state's various adjudicative bodies, a witness generally should not be fired for complying with a hearing officer's instructions. We hold that the record, as currently developed, does not support summary judgment when the hearing officer departs from the regulations by failing to provide a subpoena.

# Facts and Procedural History

Forrest Perkins was employed by Memorial Hospital of South Bend for about four years, first as a security officer and then as a police officer for the hospital police department. Before working for Memorial, Perkins

served for thirty-two years as a Michigan State Trooper. Both parties acknowledge that Memorial employed Perkins as an at-will employee.

In May 2015, Perkins left work early to testify at an unemployment benefit appeals hearing against Memorial on behalf of former coworker Rick Bradley. Perkins was told a subpoena would be waiting for him at the hearing, and he contends he attended the hearing under the belief that he was being subpoenaed to testify. As a longtime state trooper, Perkins was well aware of his obligation to appear and testify pursuant to routine compulsory process. Five days earlier, Bradley's counsel had requested that the hearing officer issue a subpoena for Perkins as a rebuttal witness and sent a letter notifying Memorial of the request. But once at the hearing, the hearing officer told Perkins that a subpoena "wasn't needed" for him to testify. Appellant's App., p.121. Memorial, however, did not appear to contest Bradley's unemployment claim.

As Bradley still needed to present a *prima facia* case for unemployment benefits, Perkins provided very limited testimony about a staff meeting he attended. Although Memorial did not contest Bradley's hearing, Craig Whitfield, Perkins's supervisor, suspected that Perkins was attending the unemployment hearing after seeing an email that day on Perkins's cell phone from Bradley's email address with a subject line about the hearing. These suspicions were confirmed after Whitfield drove to the unemployment office and saw Perkins's truck in the parking lot. Whitfield also acknowledged there was no evidence that Perkins was ever disciplined for leaving his shift early.

Despite leaving Bradley's claims uncontested, Memorial requested an audio recording of the unemployment hearing, which Whitfield listened to with an HR manager. A copy of this recording is not part of the record, and the only evidence regarding the hearing in the record is limited deposition testimony from Perkins.

The next month, a cashier reported to Whitfield that Perkins stole gravy from the cafeteria. Although Perkins paid for his omelet, a bottle of water,

and a biscuit, he did not tell the cashier that he ladled gravy over his biscuit. According to Memorial, Perkins did not open his Styrofoam container as the signs in the cafeteria instruct patrons to do when they pay the cashier.

Memorial then fired Perkins, maintaining, as it still does, that his employment was terminated for stealing food from the cafeteria in violation of the employer's handbook. Memorial contends this reason "is well-documented, legitimate, and non-discriminatory." *Id.*, p.52. Before the alleged incident of gravy stealing, however, Memorial concedes that "Perkins did not have any disciplinary complaints and was never written-up for violations of the employee handbook prior to his termination." *Id.*, p.78.

Perkins sued Memorial, alleging wrongful termination. Memorial moved for summary judgment, arguing that even if Perkins's allegations were true, Memorial could fire Perkins for testifying at an unemployment benefits hearing for a coworker. Because Perkins was not actually and physically issued a subpoena, Memorial reasoned, Perkins's testimony did not fall within the public policy exception to at-will employment. The trial court granted Memorial's motion for summary judgment, concluding that because Perkins was not served with a subpoena, he was not afforded the protections granted by Indiana's at-will employment doctrine. Perkins appealed, and the Court of Appeals affirmed.

We now grant transfer and reverse.

## Standard of Review

We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting Ind. Trial Rule

56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

The burden rests initially on the summary-judgment movant to "demonstrate the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994). We limit our review to materials designated at the trial level. *Fraternal Order of Police, Lodge No. 73 v. City of Evansville*, 829 N.E.2d 494, 496 (Ind. 2005).

# Discussion and Decision

Drawing all inferences in Perkins's favor for summary judgment purposes, both parties agree we should accept as true his claim that he was actually fired in retaliation for testimony at the unemployment hearing. Therefore, we must determine whether Perkins could be fired—under the at-will employment doctrine—for this testimony.

"Indiana follows the doctrine of employment at will, under which employment may be terminated by either party at will, with or without reason." *Wior v. Anchor Indus., Inc.*, 669 N.E.2d 172, 175 (Ind. 1996). "The presumption of at-will employment is strong, and we are disinclined to adopt broad and ill-defined exceptions to the employment at-will doctrine." *Baker v. Tremco Inc.*, 917 N.E.2d 650, 653 (Ind. 2009) (citing *Orr v. Westminster Village N., Inc.*, 689 N.E.2d 712, 717 (Ind. 1997)).

Only three exceptions to the doctrine have been recognized by this Court. *Id.* "First, if an employee establishes that 'adequate independent consideration' supports the employment contract, the Court generally will conclude that the parties intended to establish a relationship in which the employer may terminate the employee only for good cause." *Orr*, 689

N.E.2d at 718 (citing *Romack v. Public Service Co.*, 511 N.E.2d 1024, 1026 (Ind. 1987). Second, the "public policy" exception protects from termination an employee exercising a clear statutory right or obeying a legal duty. *Baker*, 917 N.E.2d at 654. "Third, this Court has recognized that an employee may invoke the doctrine of promissory estoppel." *Id.* (citing *Orr*, 689 N.E.2d at 718).

Both parties agree that Perkins's case should be analyzed under the public policy exception. "[W]e have recognized a public policy exception to the doctrine if a clear statutory expression of a right or a duty is contravened." *Baker*, 917 N.E.2d at 654 (citing *Wior*, 669 N.E.2d at 177 n.5). A trio of cases decided by this Court explain how the exception works.

In *Frampton v. Central Indiana Gas Co.*, we held that an employee could not be fired in retaliation for excising her right to file for disability benefits. 260 Ind. 249, 253, 297 N.E.2d 425, 428 (1973). Finding that the statutory language of the disability act barred that firing, we reasoned that if we upheld the retaliatory discharge under the common law at-will employment doctrine, we would open "the door to coercion and other duress-provoking acts." *Id.* at 252, 428.

In *McClanahan v. Remington Freight Lines, Inc.*, we added that the public policy exception includes a "separate but tightly defined exception to the employment at will doctrine" that protects an employee when he is discharged by an employer "for refusing to commit an illegal act for which he would be personally liable." 517 N.E.2d 390, 393 (Ind. 1988). We held that the plaintiff could not be fired for refusing to drive an overweight tractor-trailer through Illinois as he would be personally liable for the violation if caught. *Id.* "[F]iring an employee for refusing to commit an illegal act for which he would be personally liable," we reasoned, "is as much a violation of public policy declared by the legislature as firing an employee for filing a workmen's compensation claim." *Id.*

In *Baker v. Tremco Inc.*, our most recent decision on the public policy exception, we found that an employee's mistaken belief of law did not justify protection. 917 N.E.2d at 655–56. The plaintiff in *Baker* alleged he was fired for refusing to sell his employer's roofing products through an

education consortium that he argued contravened Indiana bid rigging statutes. *Id.* at 653. We clarified that an employee's mistaken belief that his employer's conduct was illegal under a statute—while in reality the conduct was expressly authorized by another statute—was not "on par with the rights and obligations" protected by the public policy exception. *Id.* at 655–56.

Perkins offers two alternative theories to explain why his conduct should be protected as the exercise of a clear statutory right or duty. First, Perkins argues that we should expand the public policy exception to cover **all** testimony by witnesses in unemployment hearings. Second, Perkins contends that unlike the plaintiff in *Baker*—who had a mistaken belief that his employer's conduct was illegal—Perkins's mistaken belief that a subpoena would have required him to testify was not a mistaken interpretation of the law but of fact. Perkins asserts he was induced to testify when he was told that a subpoena would be waiting for him at the hearing. We decline to endorse these broad categorical distinctions.

Memorial responds that since the legislature has granted no express statutory right or duty to testify as a witness—outside of a subpoena—testimony does not fall within the limited public policy exception. To Memorial, Perkins's acknowledgment that he never received a valid subpoena controls: his conduct is not protected by the public policy exception because he had no duty to testify. The unique factual nature of the case, however, does not support this analysis.

## I. Legal duties of a witness in an unemployment compensation hearing

The General Assembly has charged the Indiana Department of Workforce Development, or DWD, with administering unemployment compensation benefits, including adjudication of claims for benefits and initial appeals before an administrative law judge, or ALJ, appointed by the department. *See* Ind. Code ch. 22-4-17. The legislature has also granted

the DWD authority to develop binding administrative rules governing these appeal hearings. I.C. § 22-4.1-3-3 (1994); *see generally* 646 Ind. Admin. Code 5-10 (governing "Appellate Procedure" for DWD). Under the rules adopted by the DWD, unemployment hearings are "conducted informally," allowing parties to present evidence supporting their claims under relaxed procedural and evidentiary rules. 646 I.A.C. 5-10-5(a) (2011); *see, e.g., Id.* § 5(b) ("Hearsay evidence that is not admissible under a recognized hearsay exception may be admitted, but shall not be entitled to the same evidentiary weight as direct testimony."). As a gap-filler, however, the regulations default to rules established in the Indiana Rules of Trial Procedure and the Indiana Rules of Evidence. *Id.* § 5(a).

But unlike in a traditional civil case, the authority to issue subpoenas rests solely with the ALJ in unemployment compensation hearings, and a party must request a subpoena before a hearing. I.C. § 22-4-17-7 (2006); 646 I.A.C. 5-10-13 ("Whenever the attendance of a witness . . . is desired… the party must request the issuance of a subpoena. The request must be… directed to the clerk of the administrative law judge."); *cf.* Ind. Trial Rule 45(A)(2) (allowing attorneys to issue subpoenas). "The request will be granted or denied at the discretion of the administrative law judge" and requires "a showing of necessity." 646 I.A.C. 5-10-13 (2011). Once a party files a timely request, "a subpoena, **or a denial** of a request for a subpoena, **shall** be served on all interested parties, by mail, by the clerk of the administrative law judge." *Id.* (emphases added).

First, since the DWD has not adopted any contrary or more specific rules about an individual's responsibilities while being served, we can assume the unemployment appeals procedure incorporates Trial Rule 4.16, which governs service of process. *See* 646 I.A.C. 5-10-5(a) (providing that "in general," trial rules serve as gap-fillers governing the agency's adjudicative process). Under Indiana Trial Rule 4.16, individuals served with process must cooperate with the service and must not knowingly

evade it.[1] Ind. Trial Rule 4.16 ("It shall **be the duty** of every person being served under these rules to cooperate, accept service, comply with the provisions of these rules . . . .") (emphasis added). By definition, Trial Rule 4.16—a rule that applies to a party "being served"—does not predicate the duty on knowledge that the underlying document served is valid in all technical aspects. Indeed, during service of process, there ordinarily is not time for a person to read a subpoena and reach that determination. It is only after one has already fulfilled his duty to cooperate with service that he would have opportunity to examine the contents and language of the subpoena.

Second, once subpoenaed by a hearing officer, an individual must, by statute, comply with the subpoena, I.C. § 22-4-17-8 (2006) (failing to obey an "order of the court may be punished by said court as a contempt thereof"), and he ultimately commits a misdemeanor if he refuses to obey, I.C. § 22-4-34-5 (2006). These statutes establish that testifying under subpoena meets the definition of a legal duty protected under *McClanahan*. *See* 517 N.E.2d at 392–93.

Third, a witness in an unemployment hearing has a clear statutory duty to tell the truth upon taking the stand, since he will be criminally liable for giving knowingly false answers or "fail[ing] to disclose a material fact[ ] to prevent or reduce the payment of benefits to any individual entitled." I.C. § 22-4-34-2 (1978); *see also* I.C. § 22-4-17-9 (2006) ("No person shall be excused from attending and testifying or from producing [documents], and other records before . . . an [ALJ] . . . in obedience to the subpoena. . . on the ground that the testimony or evidence, documentary or otherwise, required of the person may tend to incriminate the person or subject the person to a penalty or forfeiture. . . . Any testimony or evidence . . . shall be deemed a communication presumptively privileged."). Since the

---

[1] Under Trial Rule 45, "[s]ervice of a subpoena . . . may be made in the same manner as provided in . . . Rule 4.16." Ind. Trial Rule 45(C).

witness is under a duty to testify honestly, he also cannot be fired based merely on the truthful content of his testimony. In other words, an employer cannot fire an employee for refusing to lie or remain silent on the stand. In sum, once a witness is under oath, he must answer questions honestly and he generally cannot refuse to answer questions by either remaining silent or attempting to leave the stand.

Although we find no "clear statutory expression of a right or a duty," *Baker*, 917 N.E.2d at 654, to appear voluntarily at unemployment hearings without a subpoena's coercion, we agree with the dissenting opinion below: in our adjudicative system, accurate witness "testimony is essential to the process, to the parties and to correct decision-making," *Perkins v. Mem'l Hosp. of South Bend*, 121 N.E.3d 1089, 1094 (Ind. Ct. App. 2019) (Kirsch, J., dissenting), *vacated*. Coworkers are often the only non-interested party able to provide or verify facts critical to the unemployment benefits adjudicative process. But it is the province of the legislature to expressly provide statutory protection for such voluntary testimony by at-will employees. *See, e.g.*, *Paul Stieler Enterprises, Inc. v. City of Evansville*, 2 N.E.3d 1269, 1277 (Ind. 2014) ("The right to legislate is vested exclusively in the Legislature.").

In sum, even absent an explicit statutory protection, in the context of an unemployment hearing, a witness first has a clear duty to cooperate with service of process from the moment he first believes he is being served with a subpoena. Second, once a witness has been subpoenaed by the hearing officer, he has a duty to appear and testify. And third, once a witness is testifying under oath, he has a duty to answer truthfully and generally cannot refuse to answer questions or leave the hearing to avoid questioning. Since he would be personally responsible for violating any of these duties, the person giving testimony at an unemployment hearing may be protected by the public policy exception to the at-will employment doctrine.

## II. Perkins's compliance with his legal duties

Perkins's decision to testify at the unemployment hearing implicates all three of his legal duties at different points throughout the day of the hearing. Viewing the facts in Perkins's favor, it is possible to conclude that he was complying with these distinct duties when he attended the hearing and provided testimony.

### A. Perkins complied with his duty to "cooperate" with service by appearing at the unemployment office.

Perkins contends that he went to the unemployment hearing because he believed he would be given the subpoena at the hearing.[2] Indeed, Perkins's counsel—who also represented the coworker-claimant in the underlying unemployment hearing—elaborated that in these hearings, it was regular practice for an ALJ to "provide [the subpoena] on the day of [the] hearing." Appellant's App., p.282.

Waiting until the day of the hearing to rule on a subpoena request would violate the hearing procedures adopted by the DWD because the regulations, in effect at the time, required the ALJ to provide "interested parties" with a written, mailed decision on a subpoena request **before** the hearing. 646 I.A.C. 5-10-13 (2011) ("The request must be made in time for the subpoena to be issued, and served, prior to the time and date of the hearing."). We cannot definitively say whether it was standard practice to wait until the hearing to decide on these requests, but ample evidence

---

[2] To be sure, Perkins could also have reasonably concluded that the lack of required notification meant he was not under subpoena. But given the limited time between the subpoena request and the hearing date, he could have also concluded the request was delayed or lost in the mail. Because Perkins was told a copy of the subpoena would be waiting for him at the hearing location, his decision was a reasonable attempt at compliance with service. The act of going to the hearing office is no more grounds for termination than if Perkins had instead used his lunch break to check his home mailbox for the subpoena.

suggests that, in this instance, a written decision on the subpoena request was not properly sent as the DWD regulation requires before the hearing.[3] If this decision were issued as required, Perkins would have known beforehand whether he was, in fact, under subpoena. We see no reason why the ALJ's non-compliance with the written regulation should unilaterally benefit Memorial.

Perkins maintained contact with his former coworker Bradley, the requesting party, until the morning of the hearing. Despite his efforts, Perkins was left in a bind: the ALJ had not yet provided the required notification of his decision—issuing a subpoena or a notification denying the request—and Perkins had been told by the requesting party that a subpoena would be waiting for him at the hearing. Memorial contends that it could fire Perkins for appearing voluntarily without a subpoena in hand, but such a simplistic view ignores that Perkins came to the hearing in an attempt to comply with his duty "to cooperate" with service of a subpoena under Trial Rule 4.16. We cannot expect a witness cooperating with service to decide on the underlying subpoena's validity until he has a chance to examine it. Since any witness attempting to dutifully comply with service must cooperate before the validity of the underlying subpoena is clear, we must consider the reasonableness of his belief given

---

[3] The fact that the applicable administrative code section was later updated to remove the requirement that a subpoena be mailed lends further support to Perkins's contention that subpoenas were sometimes provided at the hearing. *See* 646 I.A.C. 5-10-13(c) ("A subpoena, or a denial of a request for a subpoena, shall be served on all interested parties by the clerk of the administrative law judge.") This observation is not a criticism of the ALJ—we know there may be case load constraints or other considerations that made the written regulations unworkable. Still, this case illustrates that there can be real consequences when actual practice differs from what the written procedure requires.

the information known prior to service.[4] Unlike the plaintiff in *Baker*—who wrongly believed he had acquired a duty through a purported conflict within Indiana's statutory scheme, 917 N.E.2d at 655–56—Perkins's choice to attend the hearing can be viewed as a reasonable attempt to fulfill a clearly defined and applicable duty to cooperate with service. Like in *Frampton*, 260 Ind. at 253, 297 N.E.2d at 428, a "critically important public policy," is at issue: the integrity of our system of administrative adjudications depends on witnesses who are willing to act reasonably in compliance with their duty to cooperate with service.

## B. Perkins could still have been compelled to testify without a physical subpoena.

Although Perkins could not be fired for his decision to come to the unemployment hearing in compliance with his duty to cooperate with service, this duty no longer applied once the ALJ told Perkins that a subpoena "wasn't needed." Appellant's App., p.121. Perkins's duty to comply with **service** under Trial Rule 4.16 evaporated the moment Perkins knew he would not be served.

Since Perkins was already at the hearing when he found out he had not been subpoenaed, the next question is whether Perkins was free to leave the hearing without facing legal jeopardy once he arrived. Contrary to the reasoning of the opinion below, the mere fact that Perkins was not handed a physical subpoena does not settle the question of whether he would

---

[4] To be clear, we are not endorsing a broad distinction between reasonable, but mistaken, beliefs of facts as opposed to mistakes of law. Rather, we merely hold that the unique nature of the duty "to cooperate" with a subpoena requires us to defer to Perkins's reasonable belief. Outside the unique context of a subpoena, we do not today create a general rule that a reasonable mistake of fact always brings an employee's actions within the protection of the public policy exception. If this opinion created such a general rule, as the dissent contends, there would be no need for Perkins to provide evidence at trial that he would have been compelled to testify once he learned at the hearing that there was no subpoena. *See Post*, at 2.

have faced legal jeopardy if he had left the hearing. *See Perkins*, 121 N.E.3d at 1093–94 ("[W]e need not decide whether issuance of a subpoena would have created a duty for Perkins to testify because Perkins admits that he was never issued a subpoena. Absent the exercise of a statutory right or duty, the public policy exception does not apply.") (footnote omitted). The ALJ undoubtedly had the power to compel Perkins's testimony at any moment through Indiana Code section 22-4-17-7, and Perkins would have been instantly subject to contempt of court for attempting to leave.

We do not know conclusively why the ALJ thought that a subpoena "wasn't needed," but determining whether Perkins faced legal jeopardy is the critical inquiry here. For instance, if the ALJ did not issue a subpoena because the applicable subpoena standard was not met, and Perkins chose to testify anyway, then his decision to testify was voluntary and should not be entitled to protection. *See Baker*, 917 N.E.2d at 656 (holding that a plaintiff's mistaken belief of law was insufficient to protect him from termination). If, on the other hand, the ALJ decided to dispense with the formality of writing out a subpoena—given that Perkins was already present—then Perkins was under a constructive duty to testify because a subpoena would have been issued the moment he tried to leave without testifying. The integrity of the unemployment adjudicative system requires that protection be provided if Perkins was under such a constructive duty to testify. *See, e.g.*, *McClanahan*, 517 N.E.2d at 393 ("Depriving [an employee] of any legal recourse under these circumstances would encourage criminal conduct by both the employee and the employer.").

Based on this record, we cannot definitively conclude that Perkins voluntarily chose to testify. Despite Memorial's decision to leave the hearing uncontested, Perkins was still called to help establish a *prima facie* case for unemployment benefits. The applicable regulations require that the ALJ "shall" issue a subpoena "upon a showing of necessity." 646 I.A.C. 5-10-13. Because Perkins's testimony was needed to establish this *prima facie* case, we can surmise that this necessity requirement had been

met. Given these circumstances, it is unclear why the ALJ did not issue the subpoena after it had been properly requested five days before the hearing. Perhaps, with the witness present the ALJ merely decided to dispense with formal paperwork to save time.

Based on the facts known, if Perkins tried to leave the hearing before being sworn, he may have immediately been handed a subpoena compelling him to testify. We will not automatically hold the ALJ's failure to comply with the regulations against a witness attempting to comply with his statutory duties. These unsettled factual questions mean Memorial Hospital has not established that Perkins was free to leave before being sworn in as a witness.

### C. After Perkins took the stand, he was under a duty to testify completely and honestly.

Once on the stand, Perkins could not have left the hearing or lied without facing legal consequences. Regardless of whether Perkins voluntarily took the witness stand, he was under a statutory duty to testify honestly and answer all questions once seated. *See* I.C. § 22-4-34-2; I.C. § 22-4-17-9. Since Perkins was under a duty once on the witness stand, Memorial could not have fired him for testifying truthfully. Consequently, further inquiry should focus narrowly on the time period between when Perkins was informed he was not under subpoena and when he physically took the witness stand.

## Conclusion

We continue to strongly presume at-will employment. *See Baker*, 917 N.E.2d at 653. And we will not create a new exception for voluntary witness testimony at unemployment hearings. The ability to compel testimony of a third-party witness, however, is "a critically important public policy." *Frampton*, 260 Ind. at 253, 297 N.E.2d at 428. So testimony compelled by a subpoena or other statutory duty is protected under the

public policy exception to at-will employment. Since ensuring witnesses appear is vital to the adjudicative process, we will not ordinarily hold the witness liable for technical or procedural defects in the hearing officer's order. Allowing employers to fire an employee merely because of a small technical mistake by the hearing officer would create the very "fear of retaliation" that the *Frampton* Court contemplated. *Id.* To be sure, however, this case shows why it is best practice for coworker-witnesses to confirm they have a subpoena in hand before testifying.

Viewing the evidence in the light most favorable to Perkins, we can view his decision to attend the unemployment hearing as a reasonable attempt at cooperation with service of process. But we cannot conclude, given the outstanding subpoena request, that Perkins did not face legal jeopardy if he refused to testify once at the hearing. To prevail on summary judgment, Memorial needed to show that Perkins voluntarily chose to testify and that he would not have been immediately compelled to testify if he had refused. We reverse and remand for further proceedings.

Rush, C.J., and David and Goff, JJ., concur.
Slaughter, J., dissents with separate opinion.

ATTORNEYS FOR APPELLANT
Shaw R. Friedman
Nelson G. Pichardo
Friedman & Associates, P.C.
LaPorte, Indiana

ATTORNEYS FOR APPELLEE
Jeffery A. Johnson
Robert J. Palmer

May • Oberfell • Lorber

Mishawaka, Indiana

**Slaughter, J., dissenting.**

I respectfully dissent. The trial court was correct to enter judgment in favor of the defendant, Memorial Hospital of South Bend. And the court of appeals was correct in affirming that judgment under well-settled principles of Indiana's employment-at-will doctrine. Thus, I would deny transfer and leave the appellate court's well-crafted decision undisturbed. But because our Court has elected to weigh into the merits here, I write separately to explain why I believe our Court's disposition is not only wrong but needlessly blurs what had been a clear, bright-line rule.

Indiana has long been an employment-at-will state. Generally, that means either employer or employee can terminate the employment relationship at any time, for any reason, or for no reason at all. Over time, we have recognized three exceptions to this general rule. The only exception at issue here is our so-called "public-policy" exception—where an employee is fired for exercising a statutory right or duty.

We first recognized this exception in *Frampton v. Central Indiana Gas Company*, 260 Ind. 249, 297 N.E.2d 425 (1973). There, we held that the plaintiff stated a valid claim for retaliatory discharge by alleging she was fired for seeking workers-compensation benefits. As we concluded,

> under ordinary circumstances, an employee at will may be discharged without cause. However, when an employee is discharged solely for exercising a statutorily conferred right[,] an exception to the general rule must be recognized.

*Id*. at 253, 297 N.E.2d at 428.

Unlike the statutory right in *Frampton*, Forrest Perkins had no such right to testify at his co-worker's unemployment-benefits hearing. Nor, on this record, did Perkins have a duty to testify at that hearing because no legal process compelled his attendance. Thus, I would hold that Perkins fails to satisfy our narrow public-policy exception to the employment-at-will doctrine—meaning the Hospital was entitled to fire him, and the trial court was right to enter judgment in the Hospital's favor.

To be clear, I have no quarrel with the Court's observations that a prospective witness to a judicial or administrative proceeding has "a clear duty" to cooperate and accept service of process; that a witness under subpoena must appear and give testimony; and that a witness under oath must testify truthfully. I also agree that terminating an employee who tries or succeeds in fulfilling these legal duties may implicate our public-policy exception. But the Court takes these acknowledged duties and imposes an additional duty on would-be witnesses with no legal basis for doing so. A witness's duty to cooperate and accept service is modest. It forbids the witness from evading service, but it does not require the witness to take affirmative steps to track down the process server. No one served—or tried to serve—Perkins with a subpoena. Thus, there would have been no basis for charging an empty-handed Perkins with evading service had he refused to attend the co-worker's benefits hearing. Because Perkins never received a subpoena, he had no duty to appear at the hearing, much less to testify. That alone should have defeated Perkins's invocation of the "right-or-duty" exception to our employment-at-will doctrine.

Yet the Court excuses the lack of a subpoena by observing that Perkins **believed** he had to appear and testify—an error the Court describes as one of fact, in contrast to an error of law, which we have held does not qualify a plaintiff for relief under our public-policy exception. See *Baker v. Tremco Inc.*, 917 N.E.2d 650, 655–56 (Ind. 2009). The Court's proposed distinction is not persuasive for two reasons. First, I see no justification for treating mistakes of fact differently than mistakes of law under this exception, and the Court offers none. Second, and more fundamentally, I see no meaningful way for distinguishing a mistake of fact from one of law. What the Court characterizes as Perkins's mistake of fact (that he would receive a subpoena at the hearing) could also be viewed as a mistake of law (that he was duty-bound to attend the hearing without having received a subpoena). These competing characterizations strike me as opposite sides of the same coin, and I can discern no intelligible basis for treating Perkins's mistake as one versus the other. Yet the Court attributes outcome-determinative significance to this elusive distinction—as if this purported difference somehow makes all the difference.

The Court, apparently recognizing the difficulty of classifying this and other employee errors as mistakes of fact versus mistakes of law, insists it is not announcing a "broad distinction" between such mistakes. Rather, the Court says, it is merely recognizing the "unique nature of the duty 'to cooperate' with a subpoena", which the Court holds requires deference "to Perkins's reasonable belief" of his duty to cooperate. Of course, in both fact and law, there was no subpoena, and thus no duty of any kind arose concerning it—no duty to cooperate, no duty to attend the hearing, no duty to testify at the hearing. I would hold, as a matter of law, that Perkins did not (and could not) have a reasonable belief of a duty to cooperate with an unissued, non-existent subpoena. With no such duty, the public-policy exception to Indiana's employment-at-will doctrine does not apply.

For these reasons, I would either deny transfer or summarily affirm the court of appeals' opinion.