**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 29, 2012[*]
Decided December 18, 2012

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 12-1847 | Appeal from the |
| | United States District Court for the |
| JOHN NIXON, | Southern District of Indiana, |
|     *Plaintiff-Appellant*, | Indianapolis Division. |
| | |
|     *v.* | No. 1:08-cv-00648-LMJ-MJD |
| | |
| LUCIEN HAAG, *et al.*, | Larry J. McKinney, |
|     *Defendants-Appellees*. | *Judge*. |

**O R D E R**

John Nixon, a professional expert witness on firearm mechanics, appeals the grant of summary judgment in his defamation suit against the Association of Firearms and Tool Mark Examiners and two of its members, Lucien Haag and David Brundage. Both men had emailed fellow association members, among others, about Nixon's qualifications as a firearms expert—emails containing statements that, Nixon believed, impugned his professional competence. The district court found none of the statements to be defamatory. We affirm.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(c).

Nixon has been working as an expert witness in firearms and ballistics for the past twelve years, four on behalf of the British government. He is a past president of the Indiana Society of Professional Engineers, and has been involved in more than 200 legal proceedings and testified as an expert approximately 80 times on issues that include wound ballistics, trajectory, cartridge-case ejection, tool marks, firearm and ammunition identification, and distance determination. In 2003 Nixon applied unsuccessfully for provisional membership in the Association of Firearms and Tool Mark Examiners, an Illinois nonprofit organization dedicated to advancing firearm and tool-mark identification. Nixon failed to comply with the Association's membership requirement that he submit with his application three letters of recommendation from Association members (or, if such recommendations were not obtained, an accompanying explanation).

This suit arises out of events surrounding Nixon's participation in a capital murder trial, *Indiana v. Jeter.* Nixon had testified in the penalty phase as a fact witness, but the defense attorney tried to qualify him as an expert in firearms and ballistics. The court sustained the prosecutor's objection that Nixon was not qualified to testify because an adequate foundation had not been laid. The prosecutor emailed Haag that the court had "refused to qualify" Nixon as an expert. Haag forwarded parts of the prosecutor's email to Brundage, along with a message that reads, in pertinent part: "Don Denio was prepared to come in and testify to Nixon's false testimony about his AFTE membership rejection but it turns out that it was not necessary. . . . Nixon was disqualified as a firearms expert." Brundage forwarded Haag's message to 25 recipients under the subject line, "NIXON DISQUALIFIED AS A FIREARMS EXPERT."

Nixon brought this suit in federal court under the diversity jurisdiction, alleging that the statements made by Haag and Brundage in these emails were defamatory under Indiana law. First, he points to their statement that he was "disqualified as a firearms expert" in the *Jeter* case. Second, he notes their statement that he gave "false testimony about his AFTE membership rejection" during one of *Jeter*'s pretrial hearings. At that hearing Nixon responded to the prosecutor's questions about the reasons for his Association rejection by saying that he did not know why he was rejected but that he had met "the criteria of membership" and "had three good references which is what was required."

The district court granted summary judgment to the defendants, concluding that the statements Nixon identified were not defamatory as a matter of law. The court found, first, that the statement about Nixon's "false testimony" was substantially true and not defamatory. The court also found that there was "no question" that the statement that Nixon was "disqualified as a firearms expert" was also substantially true. In the court's view, the word "disqualified" could be understood to include a situation in which a decision-maker found that a person had not met a "certain standard at a specific time," and

the judge in the *Jeter* case had declined to qualify him as an expert witness because his asserted expertise in firearms or ballistics was not corroborated by evidence. Even if that statement was not substantially true, the district court held that any inaccuracy did not damage Nixon's reputation: "Any person who read Haag's and Brudage's e-mails were apprised of precisely what took place at the *Jeter* trial" because they contained the salient portions of the prosecutor's materially accurate account.

On appeal Nixon argues that the district court erred in rejecting his claim as a matter of law because, he maintains, the defendants' statements could have been interpreted as defamatory by a reasonable jury. He insists that there was a genuine dispute about whether he was "disqualified" by the *Jeter* court because he did not try to qualify as an expert (he testified only as a fact witness). He further contends that there was a genuine dispute about whether he gave "false testimony" regarding his AFTE application because "false testimony" connotes perjury and his hearing testimony was true to the best of his knowledge.

Under Indiana law (which neither party disputes applies here), "[a] defamatory communication is one that tends to harm a person's reputation by lowering the person in the community's estimation or deterring third persons from dealing or associating with the person." *Baker v. Tremco, Inc.*, 917 N.E.2d 650, 657 (Ind. 2009). Whether a defamatory meaning is possible is determined in context based on its plain and natural meaning to the average person. *See Melton v. Ousley*, 925 N.E.2d 430, 439 (Ind. Ct. App. 2010); *Hamilton v. Prewett*, 860 N.E.2d 1234, 1243 (Ind. Ct. App. 2007). A statement is not defamatory if it is substantially true; that is, if the gist or substance of the statement is true irrespective of minor inaccuracies such that the statement has the same effect on the mind of the reader as the truth would have produced. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991)(citations omitted); *see Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993); *Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 457 (Ind. 1999). "Whether a communication is defamatory is a question of law for the court, unless the communication is susceptible to either a defamatory or non-defamatory interpretation—in which case the matter may be submitted to the jury." *Baker*, 917 N.E.2d at 657; *see Hamilton*, 860 N.E.2d at 1243.

No reasonable jury could find that the allegedly defamatory statements were not substantially true. Nixon himself concedes that the *Jeter* court refused to qualify him at trial when defense counsel offered him as an expert. "Disqualify," according to the Oxford English Dictionary, means "to pronounce unqualified" or to "deprive of the qualifications required for some purpose; to render unqualified." Under the plain and ordinary meaning of the word, there is no material difference between a judge refusing to qualify an expert or rendering him unqualified to testify as an expert. *See Simonson v. United Press Int'l, Inc.*,

654 F.2d 478, 481–82 (7th Cir. 1981); *Heeb v. Smith*, 613 N.E.2d 416, 422 (Ind. Ct. App. 1993). Nixon's evidence does not suggest otherwise. He presented statements from clients who had seen the emails and expressed concern about the significance of the disqualification, but he also stated that he was able to assuage those concerns by explaining the underlying circumstances. A reasonable person does not read statements in isolation, *Hamilton*, 860 N.E.2d at 1246, and here the context of the emails were supplemented by statements of the trial prosecutor explaining that the *Jeter* court had "refused to qualify him as an expert."

Moreover, no reasonable jury could find that the defendants' statements that Nixon had given "false testimony" were untrue. Even if Nixon subjectively believed that he had met the Association's membership criteria, his testimony was objectively false. He had not, in fact, met all the requirements for admission since he failed to include an explanation why his references were not Association members.

AFFIRMED.