
FILED

Apr 11 2019, 10:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Shaw Friedman
Nelson Pichardo
LaPorte, Indiana

ATTORNEYS FOR APPELLEE

Jeffery A. Johnson
Daniel R. Appelget
Mishawaka, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Forrest Perkins,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Memorial Hospital of South Bend,<br>*Appellee-Defendant* | April 11, 2019<br><br>Court of Appeals Case No.<br>18A-CT-1340<br><br>Appeal from the St. Joseph Superior Court<br><br>The Honorable Jenny Pitts Manier, Judge<br><br>Trial Court Cause No.<br>71D05-1609-CT-404 |

**Altice, Judge.**

**Case Summary**[1]

---

[1] Oral argument was held at the McHale Performing Arts Center at Logansport High School on March 11, 2019. We thank the staff for our warm welcome and the students for their professionalism and attentiveness throughout the argument. We also commend counsel on the quality of their written and oral advocacy.

[1] Forrest Perkins was terminated from his employment as a police officer for Memorial Hospital of South Bend (the Hospital) and thereafter filed a complaint for wrongful termination. Although the Hospital identified the reason for his termination as theft of food from the Hospital's cafeteria, Perkins contends that he was fired because, believing he had been subpoenaed, he testified at a former co-worker's unemployment benefits appeal hearing. The Hospital filed a motion for summary judgment asserting that Perkins was an at-will employee and that because he was never actually subpoenaed to testify at the unemployment hearing, the public policy exception to the at-will employment doctrine did not apply. The trial court granted summary judgment in favor of the Hospital. Perkins appeals, arguing that summary judgment was improperly granted.

[2] We affirm.

## Facts & Procedural History

[3] Perkins, who had served as a Michigan State Trooper for over thirty years, began working for the Hospital as a security officer on June 27, 2011. In 2014, the Hospital's security department became a full-fledged police department, at which time Perkins became a police officer for the Hospital. Perkins never entered into a written employment contract with the Hospital, and he was never promised continued employment through any specific date.

[4] On May 12, 2015, Perkins left his shift at the Hospital early, but did not elaborate as to why he needed to leave. Perkins then went to the

unemployment benefits appeal hearing for Rick Bradley, a former co-worker, believing he had been subpoenaed to testify.[2] Craig Whitfield, the Assistant Chief of the Hospital's police department, learned of the unemployment hearing and knew that Perkins had left his shift early. Whitfield "put two and two together" and then he and Dan Rutledge, the Chief of the Hospital's police department, drove to the unemployment hearing and confirmed that Perkins was there upon seeing his vehicle in the parking lot. *Appellant's Appendix* at 137.

[5] The Hospital did not appear for the unemployment hearing, choosing not to contest Bradley's request for unemployment benefits. The Administrative Law Judge (ALJ) did not issue the requested subpoenas to Bradley's three witnesses, including Perkins, but nevertheless, all three witnesses testified before the ALJ. Perkins maintains that his testimony concerned only the Hospital's policies that related to Bradley's termination, with the apparent import being that there was no just cause therefor. At some point after the hearing, Whitfield listened to a recording of what transpired at the unemployment benefits appeal hearing to find out the substance of Perkins's testimony.

[6] On June 7, 2015, a cashier at the Hospital's cafeteria reported to Whitfield that when Perkins went through the line to pay for his food, Perkins did not mention that he had gotten gravy, and thus, Perkins received gravy with his meal without paying for it. Whitfield investigated the matter and determined that

---

[2] Perkins was told he had been subpoenaed to testify at the hearing and believed he would receive his subpoena at the hearing.

Perkins had on two other occasions received a biscuit from the Hospital's cafeteria without paying for it. Perkins explained that he often had breakfast at the Hospital's cafeteria on weekends, each time ordering an omelet and often times, but not always, sliding down the food line to get biscuits and gravy before grabbing a bottle of water. He would then proceed to the cashier where he may or may not have opened his container to show his food to the cashier. Perkins maintains that the amounts charged often varied even if he purchased the same thing. He would pay with his credit card and discard the receipt.

[7] Employee theft was a violation of the Hospital's standard of conduct and was grounds for termination. On June 18, 2015, Perkins was terminated for stealing food from the Hospital's cafeteria. Prior to his termination, Perkins had not received any disciplinary complaints and had never been written up for violations of the employee handbook.

[8] On September 2, 2016, Perkins filed a complaint against the Hospital for wrongful termination. On January 16, 2018, the Hospital filed a motion for summary judgment and designation of evidence, arguing that Perkins was an employee at-will and that he was terminated for a valid, lawful reason. Perkins filed a response in opposition thereto, claiming that under the facts of the case, an exception to the at-will doctrine applied. The trial court held a hearing on the summary judgment motion on March 8, 2018, and four days later, issued its order granting summary judgment in favor of the Hospital. The trial court accepted as true Perkins's claim that he was terminated in retaliation for testifying at a former co-worker's unemployment benefits appeal hearing, but

nonetheless determined that because Perkins did not have a duty to do so under Indiana law, he did not establish that he was entitled to the protections of the public policy exception to the employment-at-will doctrine.

## Discussion & Decision

[9] We review summary judgment de novo, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of ... the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting Ind. Trial Rule 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

[10] The initial burden is on the summary judgment movant to "demonstrate . . . the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). We will affirm upon any theory or basis supported by the designated materials. *Henderson v. Reid Hosp. & Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied*. When a trial court grants

summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

[11] "Indiana adheres to the employment-at-will doctrine, under which employment may be terminated by either party at will, with or without a reason. *Harris v. Brewer*, 49 N.E.3d 632, 639 (Ind. Ct. App. 2015), *trans. denied*. The presumption of at-will employment is strong, and we are disinclined to adopt broad and ill-defined exceptions to the employment-at-will doctrine. *Orr. v. Westminster Village N., Inc.*, 689 N.E.2d 712, 717 (Ind. 1997); *see also Morgan Drive Away, Inc., v. Brant*, 489 N.E.2d 933, 934 (Ind. 1986) ("The employment at will doctrine has steadfastly been recognized and enforced as the public policy of this State. Revision or rejection of the doctrine is better left to the legislature.") (internal citation omitted).

[12] Indeed, our Supreme Court has recognized only three exceptions to the employment-at-will doctrine: (1) where there is adequate independent consideration that supports an employment contract; (2) where public policy demands a deviation from the employment-at-will doctrine because (a) a clear statutory expression of a right or duty is contravened or (b) an employer discharges an employee for refusing to commit an illegal act for which the employee would be personally liable; and (3) where the doctrine of promissory estoppel applies. *Baker v. Tremco Inc.*, 917 N.E.2d 650, 653-54 (Ind. 2009). If an exception to the employment-at-will doctrine applies, an employer may be liable for wrongful discharge for discharging an employee without just cause.

*Harris*, 49 N.E.3d at 640. The wrongful discharge of an at-will employee gives rise to an action in tort. *Id*.

[13] For purposes of summary judgment, we, like the trial court, will accept as true Perkins's claim that he was terminated for testifying at Bradley's unemployment hearing. Perkins and the Hospital both agree that the issue on appeal is whether Perkins's act of testifying at the unemployment hearing falls within the public policy exception to the at-will employment doctrine. Perkins maintains that his good faith belief that he had been subpoenaed to testify at the unemployment hearing gave rise to a duty to testify. The Hospital argues that Perkins did not exercise a statutory right, and he did not have a duty to testify at Bradley's unemployment hearing because he was never actually subpoenaed.

[14] In support of his position, Perkins directs us to *Frampton v. Cent. Ind. Gas Co.*, 297 N.E.2d 425 (Ind. 1973), wherein our Supreme Court first recognized the public policy exception to the at-will doctrine. In *Frampton*, an employee brought an action against her former employer for retaliatory discharge that she alleged stemmed from her filing of a worker's compensation claim. The trial court dismissed the complaint for failure to state a claim upon which relief could be granted. Notwithstanding that there were no cases holding that retaliatory discharge for filing a worker's compensation claim was actionable, the court found that such was "a wrongful, unconscionable act and should be actionable in a court of law." *Id*. at 252. Drawing parallels with cases recognizing retaliatory evictions in landlord-tenant law, the Court concluded that the employee had stated a claim upon which relief could be granted. The

court commented that "when an employee is discharged solely for exercising a statutorily conferred right an exception to the general rule must be recognized." *Id*. at 428.

[15]     Perkins asserts that "[i]t is not fanciful or folly to suggest that a similar protection may be found to exist under the existing public policy exception for a witness testifying at an unemployment hearing, when the same witness believes he or she is required to do so in response to a lawful subpoena provided by statute." *Appellant's Brief* at 16.   In this vein, Perkins correctly notes that an individual has a duty to respond to a subpoena issued by an ALJ for purposes of an unemployment hearing.   *See* Ind. Code § 22-4-19-8.[3]   Perkins admits, however, that although he believed he would receive a subpoena when he appeared for the hearing, he never actually received a subpoena.

[16]     We find *Frampton* inapposite to the case before us.   The public policy exception created in *Frampton* is "quite a limited exception" and was grounded in express statutory language—i.e., that an employee has a right to file a worker's compensation claim.   *See Meyers v. Meyers*, 861 N.E.2d 704, 707 (Ind. 2007). Here, Perkins did not have a statutory right to testify.   Further, we need not

---

[3] Subsection (a) of this statute provides, in pertinent part:

> When any person called as a witness by such subpoena, duly signed, and served upon the witness by any duly authorized person or by the sheriff of the county of which such person is a resident . . .   shall fail to obey such subpoena to appear before . . . the administrative law judge. . . or shall refuse to testify or to answer any questions . . . such failure or refusal shall be reported to the attorney general for the state who shall thereupon institute proceedings . . . to compel obedience of and by such witness.

decide whether issuance of a subpoena would have created a duty for Perkins to testify because Perkins admits that he was never issued a subpoena.[4] Absent the exercise of a statutory right or duty, the public policy exception does not apply. We decline Perkins's request to extend the exception to cover the circumstances of this case.[5]

[17] We find this case to be similar to that addressed by our Supreme Court in *Baker v. Tremco Inc.*, 917 N.E.2d 650 (Ind. 2009). In *Baker*, an employee was terminated because he refused to participate in his employer's competitive bidding practices given his mistaken belief that such practices were illegal. The Court found that the employer's competitive bidding practices were in fact legal, and thus, the employee was lawfully terminated. The *Baker* Court held that the employee's mistaken belief about the illegality of the company's bidding practices was "not on par with the rights and obligations" that formed the basis for the discharge complaint in *Frampton*, and thus, such did not

---

[4] The reasons why the ALJ did not issue the subpoenas is not clear from the record. Nevertheless, we find that such reasons are not relevant to our analysis.

[5] The *Meyers* Court noted that in the thirty years since its creation, most cases have refused to extend the *Frampton* exception. *See, e.g., Lawson v. Haven Hubbard Homes, Inc.*, 551 N.E.2d 855 (Ind. Ct. App. 1990) (holding that employee did not have a retaliatory discharge claim against former employer where employee alleged she was fired for filing a claim for unemployment compensation); *Campbell v. Eli Lilly & Co.*, 413 N.E.2d 1054 (Ind. Ct. App. 1980) (holding no claim for retaliatory discharge where employment terminated for complaining about employer's products and alleging improper activities by supervisors), *trans. denied*.

Cases where retaliatory discharge actions have been permitted generally involved plaintiffs allegedly terminated in retaliation for refusing to violate a legal obligation that carried penal consequences. *See, e.g., McGarrity v. Berlin Metals*, 774 N.E.2d 71 (Ind. Ct. App. 2002) (holding retaliatory discharge claim could stand where employee alleged he was fired for refusing to file a fraudulent tax return), *trans. denied*; *Call v. Scott Brass, Inc.*, 553 N.E.2d 1225 (Ind. Ct. App. 1990) (holding that employee could bring a retaliatory discharge claim where she claimed her former employer dismissed her because she complied with a summons for jury duty), *trans. denied*.

warrant expansion of the public policy exception to the at-will employment doctrine. *Baker*, 917 N.E.2d at 656.

[18] Like the employee's honest belief in *Baker*, Perkins's honest belief that he was subpoenaed to testify at an unemployment hearing is "not on par with the rights and obligations" that have been recognized as warranting an exception to the at-will employment doctrine. Perkins has not provided us with any other compelling reason to warrant judicial expansion of the public policy exception to the at-will employment doctrine. Given the limited nature of the recognized exceptions to the at-will employment doctrine, we must therefore conclude that Perkins's sincere yet mistaken belief that he had been subpoenaed does not fall with the public policy exception. The trial court did not err in granting summary judgment in favor of the Hospital.

[19] Judgment affirmed.

Tavitas, J., concurs.

Kirsch, J., dissents with opinion.

.

# IN THE
# COURT OF APPEALS OF INDIANA

Forrest Perkins,

*Appellant-Plaintiff,*

v.

Memorial Hospital of South Bend,

Appellee-Defendant

Court of Appeals Case No.
18A-CT-1340

**Kirsch, Judge. dissenting.**

[1] I respectfully dissent.

[2] Co-workers who testify at Unemployment Compensation hearings provide essential services to claimants, employers and the claims process. Often, they are the only unbiased witnesses, and their testimony is essential to the process, to the parties and to correct decision-making by the Administrative Law Judges who hear the claims. The importance of such witnesses to the claims process is not related to, or dependent upon, whether a subpoena is issued to secure their attendance.

[3] Officer Forest Perkins was discharged by Memorial Hospital of South Bend. The hospital's stated reason for the termination—a failure to pay a small sum for gravy in the hospital's cafeteria--was found by the trial court to be pretextual. The court determined that actual reason for the termination was that the officer testified at a former co-employee's Unemployment Compensation Hearing.

[4] The majority states that Officer Perkins was told that he had been subpoenaed and would receive the subpoena at the hearing. When the hospital did not contest the co-employee's claim, the Administrative Law Judge did not issue the subpoena. Memorial Hospital of South Bend then discharged Officer Perkins.

[5] Assuming the trial court was correct in finding that Memorial Hospital's stated reason for the termination was false, it has suffered no consequence from its wrongful behavior. On the other hand, Officer Perkins testified truthfully and suffered a very significant consequence: he was terminated from his employment.

[6] Common sense tells us that this is not good law.